**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

JAMIE LEE CHRISTENSEN,

          Plaintiff,

vs.

CARGILL, INC., a Delaware
Corporation; and MARK STRUVE,
Individually,

          Defendants.

No. C14-4121-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING
DEFENDANTS' MOTION FOR
PARTIAL DISMISSAL OF
PLAINTIFF'S COMPLAINT**

———————————————

**TABLE OF CONTENTS**

I.    **INTRODUCTION AND BACKGROUND**..............................................2
    A.   *Factual Background* ...........................................................2
    B.   *Procedural Background* .......................................................6

II.   **LEGAL ANALYSIS** .................................................................8
    A.   *Standards For Motions To Dismiss*.........................................8
    B.   *Hostile Work Environment Claims* .......................................10
        1.   *Requirements for hostile work environment claim*.................10
        2.   *Christensen's sexually hostile work environment
            claim* ..................................................................12
            a.   *Limitations period*............................................12
            b.   *Continuing violation*..........................................15
            c.   *Merits of Christensen's claim* ...............................18
    C.   *Claims Against Struve In His Individual Capacity*.......................18
        1.   *Sexual Discrimination*..................................................18
        2.   *Retaliation* .............................................................20

III.  **CONCLUSION** .....................................................................22

Plaintiff, a former soybean origination merchant, alleges that she was subjected to a sexually hostile work environment, sexual discrimination, and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Iowa Civil Rights Act, Iowa Code Ch. 216. The defendants—a grain trading corporation and a grain trader employee—have moved to dismiss some of plaintiff's claims. Thus, I must determine whether plaintiff has sufficiently pleaded the challenged claims.

## I. INTRODUCTION AND BACKGROUND

### A. Factual Background

"When ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). Thus, the factual background to the pending motion to dismiss must be drawn from the factual allegations in plaintiff Jamie Lee Christensen's Complaint, unless other matters are also incorporated by reference, integral to her claims, subject to judicial notice, matters of public record, orders, or in the record of the case. *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012) (citing 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (3d ed. 2004)). In this case, Christensen attached to her Complaint her Iowa Civil Rights Commission Complaint Form, a timeline of events, as well as a right to sue letter she received from the Iowa Civil Rights Commission. Thus, the factual background presented, here, is based on Christensen's allegations in her Complaint and the attached documents.

Plaintiff Jamie Lee Christensen is a resident of Plymouth County, Iowa. Defendant Cargill, Inc. ("Cargill") is a Delaware Corporation licensed to do business in

Iowa and doing business in Woodbury County, Iowa. Defendant Mark Struve ("Struve") is a resident of Woodbury County, Iowa, and an employee of Cargill.

On October 28, 1993, Christensen was hired by Cargill as a soybean origination merchant. At some unspecified time in 2008, Struve made sexual advances toward her while they were on a business trip. Christensen rejected Struve's advances. Christensen explains that the following occurred:

> Cargill sent Mark and me to a celebration event where other merchants from around the U.S., who were also responsible for the success, also attended. Normally after the day's events ended, individuals attending would go to the hotel bar, to catch up with each other, since we rarely got time to see each other. I don't remember the circumstances, but as a group we decided to go back to my hotel room for some drinks. After a couple drinks people started calling it a night, leaving Rich Berg, Mark Struve and myself in my room. Rich said he was going to bed and I stated I needed to do the same. He left and at that point I asked Mark to leave also. He asked me if I could rub his neck for a minute because it was hurting him, I said that's fine but then you have to go.
>
> After I rubbed his neck, he asked if I wanted my neck rubbed, I said no I want you to leave. He lay back on the bed, I thought he had passed out, so I tried to wake him by pulling his arms, but couldn't get him to move. I started pushing him and telling him he needed to get up and go to his room. He asked if he could just stay in my room and I replied no. I told him to again leave and told him to get out or to give me his room key so I could sleep there, but I wasn't staying in the same room with him. He refused to give me his room key, so I told him I was going to get Rich or someone from the hotel to get him out of my room. Which at that point, he immediately got up, said he was sorry and left. I didn't think anything of it because nothing like this ever happened before.

The next day nothing was said about what had happened the night before, everything seemed normal, until we were on our way home from the airport. Mark was driving, we were around Missouri Valley, when he started asking me whether I was attracted to him, had I ever thought about him and I sexually together, I told him no, he was my friend, I was married, he was married, we both had kids, I liked him as a friend, but that was it. He said he knew, but if we both weren't married, would I be attracted to him or go out with him. He then made the comment that he thought about it, he thought I would be crazy in bed and we would have great sex. I told him it didn't matter, we were both married and I don't mess around and it wasn't going to happen. I can't remember what was said after that, but I remember telling him at that time, that no matter what he said it, would never happen, even if we were both single, because I don't date or sleep with anyone at work, so just drop it. We didn't talk much after that for the balance of the car ride and the topic of discussion never came back up.

Complaint Ex. D, Christensen's Timeline at 1.

In the following months, Christensen's job responsibilities changed and Struve frequently belittled and reprimanded Christensen in front of peers more often, sometimes multiple times in a day. As Christensen explains:

My next review, my job description changed, I was told I would no longer be managing the Vistive program at Sioux City, I asked why or how it was decided and Jim said Mark and he felt the change would be good for my career development. (I pleaded with Jim not to change my job because I loved the program, took ownership in my job, had embraced the program when no one ever wanted it, Mark and Eric both thought it was just another specialty program that would never make it and commented often that they thought I was wasting my time & effort trying to continue to make the program successful). I was told from Jim, I needed to be a

team player, train Eric and let someone else "shine" and embrace "Discuss, Decide and Support" their decision. I went to Mark, pleading with Mark to talk to Jim about their decision and to please change their decision, but Mark just looked disgusted with me, I can't remember if anything was said after that, because I was still in shock over the decision.

After creating training manual, over 40+ hours of training, was constantly blamed for not providing adequate training to Eric, bought [sic] back into program only when problems occurred to clean them up, told they occurred because of my failure to train Eric properly and told it was the success of the team. (Happened 3 times)

Denied training on my new role from Mark, manager told me I needed to show the initiative and complete my own training because Mark didn't have time, I controlled my own destination [sic], and I had received more important title & raise but nothing really changed, Mark would make all the decisions[.]

Complaint Ex. D, Christensen's Timeline at 2.

In 2008, because of Struve's actions against her, Christensen chose to find another position within Cargill at a different location. Approximately two years after Christensen changed her position and work location within Cargill, Struve was promoted to a position within Christensen's region. "Soon after Struve received his promotion, the retaliation, bullying and harassment began again making Christensen's work environment hostile." Complaint at ¶ 14(g). In February 2013, Christensen told Doug Fjelland, Facility Manager, that she believed Struve was retaliating, harassing, and bullying her. Christensen told Fjelland about Struve's sexual advances toward her that had occurred in 2008.

"In March 2013, Christensen was requested to share her story with HR along with details of the retaliation and harassment which Christensen believed was occurring and

the individuals [sic] names who could collaborate her allegations." Complaint at ¶ 14(j). Christensen did not receive any follow up after her conversation with human resources and "the retaliation and harassment continued." Complaint at ¶ 14(j). On November 1, 2013, Christensen turned in her resignation after 20 years of employment at Cargill.

Following her resignation, Christensen was told that her previous conversation with human resources had resulted in "no follow up and an investigation was then being opened." Complaint at ¶ 14(l). Christensen was asked to continue in her job while the investigation was taking place. She was asked to provide details of both past and current retaliation and harassment and was assured of no future harassment or retaliation. Christensen agreed to continue her job at Cargill.

After the investigations were completed, Christensen was not told any findings, but was told that Struve would continue in his employment. Christensen was not told what Cargill was going to do to stop the retaliation and harassment. On November 23, 2013, Christensen left her employment with Cargill as a result of being discriminated against because of her sex, subjected to a hostile work environment, and retaliated against by defendants after engaging in protected activity.

## B.    Procedural Background

On December 18, 2014, Christensen filed a Complaint alleging claims of a hostile work environment, sexual discrimination, and retaliation in violation of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*[1] Defendants have filed a Motion

---

[1]In her Complaint, Christensen avers that "[t]he Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. Section 1367." Complaint at ¶ 1. Christensen, however, never specifies any state law claims or even

For Partial Dismissal of Plaintiff's Complaint in which they assert that Christensen's hostile work environment claim is time-barred and the continuing violation doctrine is inapplicable. Defendants further argue that Christensen's hostile work environment claim fails because Christensen does not allege that the harassing conduct was based upon sex or that it created an objectively hostile work environment. With respect to Cargill, defendants also argue Christensen's hostile work environment claim fails because Cargill had no reason to know about Struve's alleged conduct before Christensen reported it and

---

identifies a state law in her Complaint. In her response to defendants' motion, Christensen concedes that she "inadvertently" did not mention the Iowa Civil Rights Act ("ICRA"), Iowa Code 216, in her Complaint and points out that her claims against Struve can only be based on the ICRA and not Title VII. The parties have proceeded under the assumption that Christensen has pled her claims under both Title VII and the ICRA. Accordingly, I will construe Christensen's claims as being brought under both Title VII and the ICRA. However, in considering the adequacy of the pleading of Christensen's claims, I will not distinguish between her claims under Title VII and comparable claims under the ICRA. I have previously noted that "[i]t is widely accepted in the Eighth Circuit that generally no distinction is made between claims based on federal law and comparable state law claims under the ICRA." *Soto v. John Morrell & Co.*, 285 F.Supp.2d 1146, 1177–78 (N.D. Iowa 2003) (citing *Hannoon v. Fawn Eng'g Corp.*, 324 F.3d 1041, 1046 (8th Cir. 2003); *Beard v. Flying J, Inc.*, 266 F.3d 792, 798 (8th Cir. 2001)); *see Mercer v. City of Cedar Rapids*, 308 F.3d 840, 845 n.2 (8th Cir. 2002) (noting, in a sex discrimination case, "'The [Iowa Civil Rights Act] is interpreted to mirror federal law. . . Thus, our analysis of [plaintiff's Title VII] claim applies equally to [her] ICRA claim.'" (quoting *Fisher v. Pharmacia & Upjohn*, 225 F.3d 915, 919 n.2 (8th Cir. 2000)); *see also Boyle v. Alum–Line, Inc.*, 710 N.W.2d 741, 750 (Iowa 2006) ("[T]he elements for the Title VII [sexually hostile work environment] claim mirror the elements of the ICRA claim."); *McElroy v. State*, 703 N.W.2d 385, 391 (Iowa 2005) ("Because the ICRA is in part modeled after Title VII, we have traditionally looked to federal law for guidance in interpreting it."). However, federal law is not controlling, but merely provides an analytical framework for analyzing ICRA claims. *See Soto*, 285 F.Supp.2d at 1178 (citing *Hulme v. Barrett*, 449 N.W.2d 629, 631 (Iowa 1989)). With these principles in mind, unless a distinction between Title VII and the ICRA becomes critical, my analysis of Christensen's Title VII claims based on sex applies equally to her ICRA claims.

took prompt action once it was reported. Defendants further contend that Christensen has failed to plead facts to support her remaining claims of retaliation and sex discrimination against Struve. Specifically, defendants argue that Christensen has failed to allege that Struve took or could have taken tangible employment actions against her because of her sex. Finally, defendants argue that Christensen also has failed to allege facts showing that Struve knew, at any time during her employment, that Christensen had accused him of harassment or otherwise engaged in a protected activity. As a result, defendants contend that Struve could not have retaliated against Christensen for her actions. Thus, defendants argue that Struve should be dismissed from this case entirely. Christensen filed a timely response to defendants' motion in which she argues that her Complaint is sufficient to state claims of a hostile work environment, sexual discrimination, and retaliation in violation of Title VII. Defendants filed a timely reply brief in support of their motion.

## II. LEGAL ANALYSIS

### A. Standards For Motions To Dismiss

Defendants move to dismiss parts of Christensen's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Rule 12(b)(6) authorizes a pre-answer motion to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). As the Eighth Circuit Court of Appeals has explained,

> We review *de novo* the district court's grant of a motion to dismiss, accepting as true all factual allegations in the complaint and drawing all reasonable inferences in favor of the nonmoving party. *See Palmer v. Ill. Farmers Ins. Co.*, 666 F.3d 1081, 1083 (8th Cir. 2012); *see also* FED. R. CIV. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to

> state a claim to relief that is plausible on its face." *Ashcroft*
> *v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed.2d
> 868 (2009) (internal quotation omitted). "A claim has facial
> plausibility when the plaintiff pleads factual content that
> allows the court to draw the reasonable inference that the
> defendant is liable for the misconduct alleged." *Id.*

*Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 850 (8th Cir. 2012); *accord Freitas*
*v. Wells Fargo Home Mortg., Inc.*, 703 F.3d 436, 438 (8th Cir. 2013) (quoting *Richter*,
686 F.3d at 850); *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (stating
the same standards).

Courts consider "plausibility" under this *Twom-bal* standard[2] by "'draw[ing] on
[their own] judicial experience and common sense.'" *Whitney*, 700 F.3d at 1128 (quoting
*Iqbal*, 556 U.S. at 679). Also, courts must "'review the plausibility of the plaintiff's
claim as a whole, not the plausibility of each individual allegation.'" *Id.* (quoting *Zoltek*
*Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 896 n.4 (8th Cir. 2010)). The Eighth
Circuit Court of Appeals has refused, at the pleading stage, "to incorporate some general
and formal level of evidentiary proof into the 'plausibility' requirement of *Iqbal* and
*Twombly*." *Id.* Nevertheless, the question "is not whether [the pleader] might at some
later stage be able to prove [facts alleged]; the question is whether [it] has adequately
asserted facts (as contrasted with naked legal conclusions) to support [its] claims." *Id.*
at 1129. Thus,

> [w]hile this court must "accept as true all facts pleaded by the
> non-moving party and grant all reasonable inferences from the
> pleadings in favor of the non-moving party," *United States v.*

---

[2] The "*Twom-bal*" standard is my nickname for the "plausibility" pleading standard established in the United States Supreme Court's twin decisions on pleading requirements, and standards for dismissal for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for claims in federal court. *See Twombly*, 550 U.S. at 544; *see also Iqbal*, 556 U.S. at 662.

> *Any & All Radio Station Transmission Equip.*, 207 F.3d 458,
> 462 (8th Cir. 2000), "[a] pleading that offers 'labels and
> conclusions' or 'a formulaic recitation of the elements of a
> cause of action will not do.'" *Iqbal*, 556 U.S. at 678, 129 S.
> Ct. 1937 (quoting [*Bell Atl. Corp. v.] Twombly*, 550 U.S.
> [544,] 555, 127 S. Ct. 1955 [(2007)]).

*Gallagher v. City of Clayton*, 699 F.3d 1013, 1016 (8th Cir. 2012); *Whitney*, 700 F.3d
at 1128 (stating the same standards).

　　With the above standards in mind, I turn to consider defendants' Motion for Partial
Dismissal of Plaintiff's Complaint.

### B.　Hostile Work Environment Claims

### 1.　Requirements for hostile work environment claim

　　Title VII prohibits an employer from discriminating "against any individual with
respect to his compensation, terms, conditions, or privileges of employment, because of
. . . sex." 42 U.S.C. § 2000e–2(a)(1).  As the Eighth Circuit Court of Appeals has
explained, "[D]iscrimination based on sex that creates a hostile or abusive work
environment violates Title VII." *Nitsche v. CEO of Osage Valley Elec. Co-op.*, 446 F.3d
841, 845 (8th Cir. 2006) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993),
and *Quick v. Donaldson*, 90 F.3d, 1372, 1377 (8th Cir. 1996)).

　　The elements of a claim of hostile environment sexual harassment differ
somewhat, depending on whether the alleged harasser is a co-worker or a supervisor.
*Cheshewalla v. Rand & Son Constr. Co.*, 415 F.3d 847, 850 (8th Cir. 2005).  To prove
such a claim based on harassment by a co-worker, the plaintiff must prove the following:
(1) that she belongs to a protected group; (2) that she was subjected to unwelcome
harassment; (3) that the harassment was based on sex; (4) that the harassment affected a

term, condition, or privilege of employment; and (5) that the employer knew or should have known of the harassment and failed to take proper remedial action. *See Wilkie v. Department of Health and Human Servs.*, 638 F.3d 944, 952 (8th Cir. 2011); *Cross v. Prairie Meadows Racetrack & Casino, Inc.*, 615 F.3d 977, 981 (8th Cir. 2010); *Sutherland v. Missouri Dept. of Corr.*, 580 F.3d 748, 751 (8th Cir. 2009); *Nitschie*, 446 F.3d at 845; *Kratzer v. Rockwell Collins, Inc.*, 398 F.3d 1040, 1047 (8th Cir. 2005); *Pedroza v. Cintas Corp. No. 2*, 397 F.3d 1063, 1068 (8th Cir. 2005); *Erenberg v. Methodist Hosp.*, 357 F.3d 787, 792 (8th Cir. 2004); *McCown v. St. John's Health Sys.*, 349 F.3d 540, 542 (8th Cir. 2003); *Duncan v. General Motors Corp.*, 300 F.3d 928, 933 (8th Cir. 2002).

When the harassment is by a supervisor, however, the plaintiff must prove the first four elements listed above, and if she also proves that the harassment resulted in a tangible employment action, then the employer is vicariously liable for the supervisor's harassment. *Gordon v. Shafer Contracting Co., Inc.*, 469 F.3d 1191, 1194–95 (8th Cir. 2006) (describing the first four elements as the "common" elements for supervisor and co-worker harassment claims); *Cheshewalla*, 415 F.3d at 850. If she does not prove that the supervisor's harassment resulted in a tangible employment action, then the employer may escape vicarious liability by proving the following elements of the *Ellerth/Faragher* affirmative defense: "(1) the employer exercised reasonable care to avoid, prevent, and promptly correct harassing behavior; and (2) the employer made preventative or corrective opportunities available; but (3) the employee failed to take advantage of such opportunities." *Stewart v. Rise, Inc.,* 791 F.3d 849, 858 (8th Cir. 2015) (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998); *Faragher v. Boca Raton*, 524 U.S. 775, 807 (1998)); *see Gordon*, 469 F.3d at 1195; *Cottrill v. MFA, Inc.*, 443 F.3d 629, 634 n. 2 (8th Cir. 2006); *Cheshewalla*, 415 F.3d at 850–51. The Eighth Circuit Court of Appeals has found that:

> to be considered a supervisor, "the alleged harasser must have
> had the power (not necessarily exercised) to take tangible
> employment action against the victim, such as the authority to
> hire, fire, promote, or reassign to significantly different
> duties."

*Cheshewalla*, 415 F.3d at 850–851 (quoting *Joens v. John Morrell & Co.*, 354 F.3d 938,
940 (8th Cir. 2004)).

### 2. *Christensen's sexually hostile work environment claim*

Initially, defendants contend that Christensen's sexually hostile work environment
claim against both defendants is time-barred under the limitations provisions of both Title
VII and the ICRA. Therefore, before considering whether Christensen has alleged the
elements of her sexually hostile work environment claim, I must determine whether the
claim is barred by the allegedly untimely filing of Christensen's administrative charge.

### a. *Limitations period*

Although both Title VII and the ICRA prohibit the same types of conduct by an
employer, they differ with respect to the time limitations in which a complainant must
comply. Compare 42 U.S.C. § 2000e–5(e)(1) (Title VII), with Iowa Code § 216.15(13)
(ICRA).[3] However, since Christensen filed her charges concurrently with the ICRC and

---

[3] Title VII provides:

> (1) A charge under this section shall be filed within one
> hundred and eighty days after the alleged unlawful
> employment practice occurred and notice of the charge
> (including the date, place and circumstances of the alleged
> unlawful employment practice) shall be served upon the
> person against whom such charge is made within ten days
> thereafter, except that in a case of an unlawful employment
> practice with respect to which the person aggrieved has

the EEOC, both Title VII and the ICRA require a discriminatory incident to have occurred within the 300 days preceding the filing of an administrative complaint.[4]

> initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier, and a copy of such charge shall be filed by the Commission with the State or local agency.

42 U.S.C. § 2000(e)-5(e)(1). The ICRA's provision reads:

> 13. Except as provided in section 614. 8, a claim under this chapter shall not be maintained unless a complaint is filed with the commission within three hundred days after the alleged discriminatory or unfair practice occurred.

Iowa Code § 216.15(13).

[4]Complaints brought under Title VII for unlawful employment practices generally must be filed with the EEOC within 180 days after the occurrence of the alleged act. 42 U.S.C. § 2000e–5(e)(1). However, if the aggrieved person first institutes proceedings with a state agency empowered to prosecute discriminatory employment practices, the time limit for filing with the EEOC is extended to 300 days. *Id.* Thus, under Title VII, the time in which a complainant has to file an administrative charge varies, based upon whether the person aggrieved has initially instituted proceedings with a state or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof. *Id.* States that maintain such agencies are known as "deferral states." *See, e. g., Worthington v. Union Pac. R.R.*, 948 F.2d 477, 479 n.3 (8th Cir. 1991). Iowa is a deferral state. *See Cross v. Foods, Inc.*, 881 F. Supp.2d 1012, 1015 n.3 (S.D. Iowa 2012) (identifying Iowa as a deferral state); *Wiemann v. Indianola Comm. Sch. Dist.*, 278 F. Supp. 968, 974 n.4

Accordingly, because Christensen filed her administrative complaint on March 14, 2014, her sexually hostile work environment claim is time barred if the harassing conduct accrued prior to May 18, 2013.

Christensen claims that during a business trip, Struve propositioned her to engage in a sexual relationship. The latest such a trip could have occurred is August 2008. This is the only incident of overt sexual harassment alleged in the Complaint. Christensen also alleges that, after she rebuffed Struve's sexual advances, Struve engaged in a pattern of hostility leading Christensen to accept another position within Cargill. All conduct to this point is still well outside the 300 day window. Accordingly, the incidents predating the limitations period are time barred unless they can be related to a timely incident as a "series of separate but related acts" amounting to a continuing violation. *See National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002) (Title VII); *Farmland Foods, Inc. v. Dubuque Human Rights Comm'n*, 672 N.W.2d 733, 741 (Iowa 2003) (ICRA). In order to establish she exhausted her administrative remedies as to the whole of the alleged sexual harassment, Christensen contends that the sexual harassment predating the limitations period was part of a "continuing violation" with the sexual harassment that occurred within the limitations period. Defendants contend that she has not alleged any facts which would support such a claim.[5] Christensen counters, arguing that she has pled sufficient facts for the continuing violation doctrine to apply.

_____

(S.D. Iowa 2003) (same); *Millage v. City of Sioux City*, 258 F.Supp.2d 976, 984–86 (N.D. Iowa 2003) (same).

[5]In *Farmland Foods*, the Iowa Supreme Court cited its decision in *Hy–Vee Food Stores, Inc. v. Iowa Civil Rights Comm'n*, 453 N.W.2d 512 (Iowa 1990). In the latter case, the Iowa Supreme Court noted the ICRA is patterned after Title VII. *Hy–Vee Food Stores, Inc.*, 453 N.W.2d at 527. Based on the similarities between the federal and state statutes, the court considered federal cases on the "continuing violations" doctrine

### b.    *Continuing violation*

In its decision in *National Railroad Passenger Corp. v. Morgan*, the Supreme Court addressed what constituted the timely filing of Title VII claims and clarified the application of the continuing violation doctrine in Title VII hostile environment cases. *Morgan*, 536 U.S. at 115–22; *see Rebouche v. Deere & Co.*, 786 F.3d 1083, 1087 (8th Cir. 2015) (discussing *Morgan's* significance); *Jensen v. Henderson*, 315 F .3d 854, 858 (8th Cir. 2002) (same)  In *Morgan*, the Court indicated, that with respect to hostile environment claims, where each act is related to the whole, "the employee need only file a charge within [the statutory period] of any act that is part of the hostile work environment." *Morgan*, 536 U.S. at 118.  However, the Court pointed out that if the acts have no relation to each other, "then the employee cannot recover for the previous acts, at least not by reference to the [more recent] act." *Id*.  Consequently, a plaintiff may not assert a continuing violation based on past isolated instances of discrimination, even where the effects persevere into the present. *See Delaware State Coll. v. Ricks*, 449 U.S. 250, 258 (1980); *Chaffin v. Rheem Mfg. Co.*, 904 F.2d 1269, 1271–72 (8th Cir. 1990).

In *Rowe v. Hussmann Corp.*, 381 F.3d 775 (8th Cir. 2004), the Eighth Circuit Court of Appeals explained what constitutes "continuing violation" harassment under *Morgan*.  In *Rowe*, the court of appeals noted that even a lengthy hiatus in harassment does not necessarily establish that pre-limitations period and post-limitations period harassment are not part of a "continuing violation." *Rowe*, 381 F.3d at 780 (citing

---

instructive. *Id*. (citing *Annear v. State*, 419 N.W.2d 377, 379 (Iowa 1988)). Consequently, I will utilize federal case law to analyze the timeliness of Christensen's claims under both federal and state law. *See Rebouche v. Deere & Co.*, 786 F.3d 1083, 1087 (8th Cir. 2015) (observing that Iowa has adopted the federal standard for determining continuing violations under the ICRA).

*Morgan*, 536 U.S. at 118). Instead, more pertinent factors to consider were whether the same harasser committed the same harassing acts before and after the limitations deadline; whether the employer was made aware of the earlier harassment; and whether there was any "intervening action" by the employer that could fairly be said to have caused the later acts of harassment to be unrelated to the earlier, otherwise untimely acts. *Id*. at 781. The Eighth Circuit Court of Appeals re-emphasized that principle more recently, holding that only "acts before and after the limitations period [that are] so similar in nature, frequency, and severity. . . must be considered to be part and parcel of the hostile work environment that constituted the unlawful employment practice that gave rise to th[e] action." *Wilkie*, 638 F.3d at 951 (quoting *Rowe*, 381 F.3d at 781). In *Rowe*, the court concluded "as a matter of law that the acts before and after the limitations period were so similar in nature, frequency, and severity that they must be considered to be part and parcel of the hostile work environment that constituted the unlawful employment practice that gave rise to this action." *Id*. In essence, the Eighth Circuit Court of Appeals has interpreted *Morgan* to mean that, in order for a hostile work environment complaint to be timely filed, "[o]nly the smallest portion of that 'practice' needs to occur within the limitations period." *Jensen*, 315 F.3d at 859 (quoting *Morgan*, 536 U.S. at 117).

Consequently, the question before me is whether Christensen has alleged timely discriminatory acts that are closely related enough to constitute a continuing violation or whether they constitute discrete discriminatory acts. Christensen has failed to show how Struve's actions in 2008 are "so similar in nature, frequency and severity" to the actions which occurred in 2013 and 2014. *See Rowe*, 381 F.3d at 779; *accord Wilkie*, 638 F.3d at 952. First, Struve's alleged harassing actions in 2008 were substantially different than those that occurred during 2013 and 2014. Struve's alleged actions in 2008 can be characterized as sexual advances toward Christensen, and include an explicit request by Struve for Christensen to engage in a sexual relationship with him. In contrast, the

actions occurring in 2013 and 2014 did not involve personal, sexual advances by Struve toward Christensen. Instead, many of the issues Christensen allegedly encountered are in the realm of the usual inter-office politics and personality conflicts rather than a sexually hostile work environment. For instance, Christensen alleges that she and Struve had various work-related conflicts including that Struve and other co-workers were critical of her job performance, accused her of not properly communicating commodities trades, and that her job responsibilities were changed.

In sum, Christensen's allegations consist of nothing more than an amalgamation of discrete, isolated instances of misconduct. *See Kimzey v. Wal–Mart Stores, Inc.*, 107 F.3d 568, 573 (8th Cir. 1997). Although the alleged incidents may have been frustrating and unpleasant for Christensen, they are insufficient to constitute a nexus between the 2008 instances of overt sexual harassment, and the conduct Christensen describes as occurring in 2013 and 2014 to be a continuing violation of the law.[6] The continuing violations doctrine was not designed to allow complainants to circumvent the limitations period by bootstrapping untimely grievances to timely, but unrelated, complaints. *See Stepney v. Naperville Sch. Dist. 203*, 392 F.3d 236, 240 (7th Cir. 2004) (noting the continuing violation doctrine was not intended to circumvent the rules surrounding what brings actions within the limitations period). As the Tenth Circuit Court of Appeals has observed, "Title VII is not intended to allow employees to dredge up old grievances; they must promptly report and take action on discriminatory acts when they occur. Unlitigated bygones are bygones." *Duncan v. Manager, Dep't of Safety*, 397 F.3d 1300, 1308 (10th Cir. 2005). Consequently, while the untimely conduct may be relevant as background

---

[6]I also find that Christensen's transfer to a different position and division from Struve in 2008 constitute intervening acts that can be fairly said to have caused the later acts of harassment to be unrelated to the allegations against Struve. *See Rowe*, 381 F.3d at 781 (noting intervening action by an employer is one factor courts may consider when ascertaining whether a continuing violation has manifested itself).

information, it cannot provide a basis for liability under either Title VII or the ICRA. *See Kline v. City of Kansas City, Mo., Fire Dep't*, 175 F.3d 660, 665 (8th Cir. 1999) (noting harassment occurring outside the limitations period may be relevant to provide background information, but that damages could only be recovered with respect to events occurring within the limitations period). Because Christensen has failed to allege facts to constitute a continuing violation, I will proceed to only address her timely allegations, those events alleged to have occurred after 2013 and 2014, with respect to the merits of Christensen's claim.

### c. Merits of Christensen's claim

With regard to the third element of her *prima facie* case, Christensen must allege that the harassment was based on her gender. As I explained above, I will not consider Struve's 2008 sexual advance because it is time barred. Absent those allegations, Christensen's Complaint is devoid of allegations that any of the 2013 and 2014 incidents were harassment based upon her gender. None of the actions Christensen encountered in 2013 and 2014 carry any sexually harassing inference and, instead, appear to have stemmed from inter-office politics and personality conflicts. Consequently, the portion of defendants' Motion to Dismiss concerning Christensen's sexually hostile environment claim is granted.

## C. Claims Against Struve In His Individual Capacity

### 1. Sexual Discrimination

It is well-settled that "supervisors may not be held individually liable under Title VII." *Bonomolo–Hagen v. Clay Cen.–Everly Cmty. Sch. Dist.*, 121 F.3d 446, 447 (8th Cir. 1997) (per curiam); *see also Bales v. Wal–Mart Stores, Inc.*, 143 F.3d 1103, 1111

(8th Cir.1998) (citing *Bonomolo–Hagen* with approval). Therefore, as a matter of law, Struve cannot be liable in his individual capacity under Title VII. Accordingly, as to any Title VII claim against Struve in his individual capacity, those claims are dismissed.

Defendants argue that Christensen's sex discrimination against Struve under the ICRA should also be dismissed. Defendants assert that Christensen has failed to plead facts showing that she suffered an adverse employment action for which Struve was responsible. I agree.

In order to establish a *prima facie* case of sex discrimination, Christensen must allege that she: "'(1) is a member of a protected class; (2) was meeting her employer's legitimate job expectations; (3) suffered an adverse employment action; and (4) was treated differently than similarly situated employees who were not members of her protected class.'" *Rebouche*, 786 F.3d at 1087 (quoting *Jackman v. Fifth Judicial Dist. Dep't of Corr. Servs.*, 728 F.3d 800, 804 (8th Cir. 2013); see *Lewis v. Heartland Inns of Am.*, L.L.C., 591 F.3d 1033, 1038 (8th Cir. 2010); *Bearden v. International Paper Co.*, 529 F.3d 828, 831 (8th Cir. 2008). "The required prima facie showing is a 'flexible evidentiary standard' that was 'never intended to be rigid, mechanized, or ritualistic.'" *Lewis*, 591 F.3d at 1039 (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002)).

In *Powell v. Yellow Book USA, Inc.*, 445 F.3d 1074 (8th Cir. 2006), the Eighth Circuit Court of Appeals discussed individual liability of co-workers under the ICRA. The court concluded that "it is unclear whether ICRA [like Title VII] bars such individual liability." *Powell*, 445 F.3d at 1079 (citing *Vivian v. Madison*, 601 N.W.2d 872, 878 (Iowa 1999). The court did not reach the issue, because "[a]ssuming, without deciding, that ICRA would permit an action against a non-supervisory co-worker," that claim would fail, because the plaintiff had not shown that the conduct of the co-workers altered the terms of the plaintiff's employment. *Id.* Similarly, here, Christensen has not

plausibly alleged that Struve was responsible for any adverse employment action suffered by Christensen. Christensen alleges that she was subjected to a policy change in the spring of 2013 while her male co-workers were not, and that she received less pay than male co-workers who worked in the same position as her. Christiansen, however, has pleaded no facts suggesting that Struve had any authority over her pay or control over what policies applied to her. To the contrary, Christensen alleges that, after her transfer in 2008, she worked in a different division from Struve, and reported to different supervisors. Therefore, Christensen has failed to state a basis for Struve's individual liability on her sexual discrimination claim and this portion of defendant's Motion to Dismiss is also granted.

### 2. Retaliation

Finally, defendants seek the dismissal Christiansen's retaliation claim against Struve in his individual capacity. To establish a *prima facie* case of Title VII retaliation, Christensen must allege that: "'(1) [s]he engaged in protected conduct, (2) [s]he suffered a materially adverse employment action, and (3) the adverse action was causally linked to the protected conduct.'" *Rebouche*, 786 F.3d at 1088 (quoting *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1021 (8th Cir. 2011)); *see Gibson v. Geithner*, 776 F.3d 536, 540 (8th Cir. 2015); *Musolf v. J.C. Penny Co.,* 773 F.3d 916, 918 (8th Cir. 2014). "To show a causal connection, a plaintiff must show that her protected activity was a but-for cause of her employer's adverse action." *Shirrell v. St. Francis Med. Ctr.*, 793 F.3d 881, 888 (8th Cir. 2015) (citing *University of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534 (2013)).

Defendants argue that Christensen fails to satisfy the third element of her claim against Struve. They contend that the flaw in her pleading is that she does not allege that Struve ever knew about her protected activity. In order for there to be a causal connection between the adverse employment decision and the protected activity, Struve must know

about the protected activity. *See Clark Co. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001); *see Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 883 (5th Cir. 2003) ("We have determined that, in order to establish the causation prong of a retaliation claim, the employee should demonstrate that the employer knew about the employee's protected activity."); *see also Farazan v. Vanguard Group, Inc.*, 582 Fed. App'x 105, 109 (3rd Cir. 2014) (holding that plaintiff failed to establish that he engaged in a protected activity by threatening to file a complaint where there was no indication that a decisionmaker at employer was aware of his threat).

Defendants argue that the only protected activity alleged in the Complaint which occurred prior to Christensen's resignation was her 2013 conversation with Doug Fjelland and Lisa Husby about Struve's alleged sexual harassment. Christensen concedes in her pleadings that this was the first time she complained to anyone in Cargill's management about Struve's alleged sexual harassment. Christensen does not plead any facts suggesting that Struve ever learned of her complaint. Indeed, Christensen admits that, at her request, Cargill's Human Resources Department did not commence a formal investigation into Struve's sexual advances at that time and that Husby did not disclose her allegations to Struve.

The flaw in defendants' argument is that Christensen's conversation with Fjelland and is not the only protected activity Christensen alleges in her Complaint. Defendants fail to note that Christensen's rejection of Struve's sexual propositions is also protected activity. The Eighth Circuit Court of Appeals has instructed that "[p]rotected activity is an informal or formal complaint about, or other opposition to, an employer's practice or act . . . if the employee reasonably believes such an act to be in violation of the statute in question." *Jeseritz v. Potter*, 282 F.3d 542, 548 (8th Cir. 2002). The Eighth Circuit Court of Appeals has observed that the "most basic form of protected activity" is telling a harasser to stop, and that is precisely what Christensen did in rejecting Struve's sexual

propositions. *Ogden v. Wax Works, Inc.*, 214 F.3d 999, 1007 (8th Cir. 2000) ("Employers may not retaliate against employees who 'oppose discriminatory conduct,' . . . and the jury reasonably concluded Ogden [opposed discriminatory conduct] when she told Hudson to stop his offensive behavior."); *see E.E.O.C. v. New Breed Logistics*, 783 F.3d 1057, 1067 (6th Cir. 2015) (holding that "a demand that a supervisor cease his/her harassing conduct constitutes protected activity covered by Title VII."); *see also Tate v. Exec. Mngmt. Servs., Inc.*, No. 105–cv–47, 2007 WL 1650410, at *2 (N.D. Ind. June 4, 2007 ("A straightforward reading of the statute's text requires finding that rebuffing sexual harassment can in some situations be considered opposition to an unlawful employment practice."), *rev'd on other grounds*, 546 F.3d 528 (7th Cir. 2008). Christensen alleges in her Complaint that after she rejected Struve's sexual advances, Struve began to immediately berate and criticize her, both before Christensen's transfer and, once again, after Struve received his promotion and was placed in the same region as Christensen. This consistent pattern of retaliation between the time of her rejection of Struve's advances and the 2013 retaliation is sufficient to establish a claim based on that protected activity. *See Scott v. City of Sioux City, Iowa*, 68 F.Supp.2d 1022, 1039 (N.D. Iowa 2014) (noting that although untimely actions that "were part of a continuing violation are not actionable, they are evidence that helps to bridge the causation 'gap' between a complaint of sexual harassment in 2004 and an allegedly retaliatory action in 2012."). Accordingly, Christensen has plead sufficient facts to support her retaliation claim against Struve and this portion of defendants' Motion to Dismiss is denied.

## III.   CONCLUSION

Accepting as true all factual allegations in the Complaint and giving Christensen all reasonable inferences that can be drawn from the allegations in her Complaint, I conclude that Christensen has failed to adequately plead her sexually hostile work

environment claim against both defendants, and her sexual discrimination claim against Struve in his individual capacity. However, I find that Christensen has adequately plead her retaliation claim against Struve in his individual capacity. Accordingly, defendants' Motion For Partial Dismissal of Plaintiff's Complaint is granted in part and denied in part.

**IT IS SO ORDERED**.

**DATED** this 30th day of September, 2015.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA